**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

* * *

BASS UNDERWRITERS, INC,

Plaintiff,

v.

KONO, *et al.*,

Defendants.

Case No. 2:22-cv-00138-RFB-EJY

**ORDER**

Before the Court are Motions for Summary Judgment by Defendants David Kono ("Kono") and Brooks Group Insurance Agency, LLC ("Brooks") (ECF Nos. 171, 172), a Motion for Summary Judgment by Plaintiff Bass Underwriters, Inc. ("Bass") (ECF No. 175), and Bass's Motion for Leave to File Under Seal (ECF No. 179). For the reasons set forth below, each Motion for Summary Judgment is **DENIED** in its entirety, and the Motion to Seal is **GRANTED**.

## I. PROCEDURAL BACKGROUND

Bass commenced this action against Kono on January 26, 2022, and moved for a temporary restraining order the same day. ECF Nos. 1, 3. The Court granted the temporary restraining order the next day, finding that Bass was likely to succeed on the merits of its claims under the Defend Trade Secrets Act ("DTSA"), 18 U.S.C. § 1836 *et seq.*, and Nevada's Uniform Trade Secrets Act ("NUTSA"), Nev. Rev. Stat. § 600A.010 *et seq.*, among others. ECF No. 7. On March 7, 2022, the Court entered the Parties' stipulated preliminary injunction, which prohibits Kono from using Bass's confidential or trade secret information and required him to produce for forensic imaging any device on which that information was stored. ECF No. 19.

With leave of Court, Bass filed the operative First Amended Complaint ("FAC") on May

10, 2023, adding Brooks as a defendant. ECF Nos. 61, 62. The FAC asserts claims for (1) misappropriation of trade secrets under the DTSA and NUTSA; (2) breach of contract; (3) breach of fiduciary duty; (4) conversion; (5) unjust enrichment; and (6) tortious interference with contractual relations. ECF No. 62. The breach of contract and breach of fiduciary duty claims are asserted against Kono only; the remaining claims are asserted against both Defendants. Brooks moved to dismiss, and the Court denied the motion following a hearing. ECF No. 67.

Discovery opened on June 21, 2022, and, after numerous extensions, closed on June 2, 2025. ECF Nos. 23, 26, 152. The Court permitted the Parties to take the depositions of Bass's Rule 30(b)(6) designees after the close of discovery, and those depositions took place on September 29 and 30, 2025. ECF No. 159.

Kono and Brooks moved for summary judgment on November 17, 2025. ECF No. 171 [hereinafter "Kono Mot."]; ECF No. 172 [hereinafter "Brooks Mot."]. Bass moved for summary judgment on liability the same day. ECF No. 175 [hereinafter "Bass Mot."]. Two days later, Bass moved to file five of its exhibits under seal. ECF No. 179. Brooks opposed the sealing motion, ECF No. 180, and Bass replied, ECF No. 181. On December 15, 2025, each Party opposed the motions directed at it. ECF No. 182 [hereinafter "Bass Opp'n to Kono"]; ECF No. 183 [hereinafter "Kono Opp'n"]; ECF No. 185 [hereinafter "Bass Opp'n to Brooks"]; ECF No. 186 [hereinafter "Brooks Opp'n"]. Kono replied on January 2, 2026, ECF No. 190 [hereinafter "Kono Reply"], and Bass and Brooks replied on January 9, 2026, ECF No. 191 [hereinafter "Bass Reply"]; ECF No. 192 [hereinafter "Brooks Reply"]. This Order follows.

## II. PRELIMINARY MATTERS

Bass seeks to seal five exhibits to its Motion: two portions of a forensic report prepared by Crowe, LLP (the "Crowe Report") (Exhibits 1 and 2), insured historical data (Exhibit 3), a spreadsheet of named-insured information (Exhibit 4), and a letter between the Parties' in-house counsel (Exhibit 5). ECF No. 179 at 2–3. Brooks opposes, arguing that Bass waived confidentiality and has not narrowly tailored its request. ECF No. 180 at 1–3. Records attached to a dispositive motion may be sealed only for compelling reasons that outweigh the public's interest in access, such as preventing court files from becoming "sources of business information that might harm a

litigant's competitive standing." Nixon v. Warner Commc'ns, Inc., 435 U.S. 589, 598 (1978); see Ctr. for Auto Safety v. Chrysler Grp., LLC, 809 F.3d 1092, 1096–97, 1101 (9th Cir. 2016); Kamakana v. City & Cnty. of Honolulu, 447 F.3d 1172, 1178–79 (9th Cir. 2006).

That standard is met here. Exhibits 1 through 4 identify nonparty insureds and disclose their policy numbers, coverage dates, premiums, and quotes. Whether that information is indeed a trade secret is for the jury to decide, see *infra*, Section V.A.1, but its disclosure would expose nonparty information and could also harm Bass's business, regardless of whether it is a trade secret. Moreover, producing these materials to opposing parties in discovery, even without a timely confidentiality designation, did not make the public. And to the extent Exhibit 1 duplicates the partial file listing attached to the original complaint, the material remains public at ECF No. 1 anyway. Exhibit 5, which Brooks produced subject to a protective order in a related subpoena action in the District of New Jersey, carries minimal public interest because the Court does not rely on it. See Kamakana, 447 F.3d at 1179. For the same reason, Brooks's request to exclude Exhibit 5 under Rule 37(c)(1) is denied as moot. See Brooks Opp'n at 27–28. The motion is therefore granted and Exhibits 1 through 5 shall remain sealed.

Brooks also asks the Court to exclude all evidence of damages under Rule 37(c)(1) because Bass did not disclose a computation of its damages until October 8, 2025, four months after discovery closed. Brooks Mot. At 14–22. Bass offers no justification for that delay, but the Court must consider whether the noncompliance involved willfulness, fault, or bad faith, and whether lesser sanctions are available. R & R Sails, Inc. v. Ins. Co. of Pa., 673, F.3d 1240, 1247 (9th Cir. 2012). Brooks raised its request within its motion for summary judgment rather than in a separate motion, see LR IC 2-2(b), and the Parties have not briefed those factors. The request is therefore denied without prejudice to a properly supported motion *in limine*. Finally, Brooks' related argument that Bass lacks any evidence of damages fails for the reasons discussed in Section V.A.3.

## III. LEGAL STANDARD

Under the Federal Rules of Civil Procedure, a party is entitled to summary judgment when they demonstrate "that there is no genuine dispute as to any material fact and [they are] entitled to judgment as a matter of law" on their claim(s). See FED. R. CIV. P. 56(a); see also Hollis v. R&R

Rests., 159 F.4th 677, 683 (9th Cir. 2025) (citation omitted). A fact is material if it "might affect the outcome of the suit under the governing law." Eat Right Foods Ltd. v. Whole Foods Mkt., Inc., 880 F.3d 1109, 1118 (9th Cir. 2018) (quoting Anderson v. Liberty Lobby Inc., 477 U.S. 242, 247 (1986)). Thus, "[a] genuine dispute of material fact exists 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" Lerner & Rowe PC v. Brown Engstrand & Shely LLC, 119 F.4th 711, 717 (9th Cir. 2024) (quoting Anderson, 477 U.S. at 248).

At this procedural posture, the Court is solely charged with determining "whether there is a genuine issue [of fact] for trial;" in other words, this Court will not "weigh the evidence" or make credibility determinations to resolve factual disputes, which are ultimately reserved for the factfinder in this case. See Eat Right Foods Ltd., 880 F.3d at 1118 (quoting Anderson, 477 U.S. at 249); see also Zetwick v. Cnty. of Yolo, 850 F.3d 436, 441 (9th Cir. 2017) (citations omitted). In doing so, the Court "view[s] the evidence in the light most favorable to the nonmoving party and make[s] all reasonable inferences in favor of that party." Eat Right Foods Ltd., 880 F.3d at 1118 (citing Tolan v. Cotton, 572 U.S. 650, 660 (2014)).

Federal courts apply a two-step framework to review motions for summary judgment. First, this Court must decide whether the moving party has met their initial burden by "demonstrating the absence of a genuine issue of material fact." Hollis, 159 F.4th at 683 (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). The nature of this initial showing varies depending on which party carries the ultimate burden of proof on a given claim. When the movant does, they "must come forward with evidence which would entitle [them] to a directed verdict if the evidence went uncontroverted at trial." Gillings v. Time Warner Cable LLC, 583 Fed. App'x 712, 715 (9th Cir. 2014) (unpublished disposition) (quoting C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc., 213 F.3d 474, 480 (9th Cir. 2000)). When the moving party does not carry the ultimate burden of proof, they can merely "point[ ] out that there is an absence of evidence to support the nonmoving party's case." Lerner, 119 F.4th at 717–18 (citation omitted).

If the movant has carried its burden, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine

issue for trial." Scott v. Harris, 550 U.S. 372, 380 (2007) (alteration in original) (internal quotation marks omitted). Where a genuine dispute of material fact exists, however, the Court will assume the version asserted by the non-moving party. See Bryan v. MacPherson, 630 F.3d 805, 823 (9th Cir. 2010); Coles v. Eagle, 704 F.3d 624, 629 (9th Cir. 2012) ("We must, in the context of summary judgment, resolve this disputed factual issue in favor of [the non-moving party and] draw all reasonable inferences in his favor. . . ."). On cross-motions, the Court evaluates each motion independently, drawing all inferences against the movant in each instance. Fair Hous. Council of Riverside Cty., Inc. v. Riverside Two, 249 F.3d 1132, 1136 (9th Cir. 2001).

## IV. FACTUAL BACKGROUND

Based on its review of the record, as framed by the Parties, the Court makes the following findings of fact.

### A. Undisputed Facts

Initially, the Court finds that the following facts are undisputed.

Plaintiff Bass is a Florida corporation with its principal place of business in Florida. Bass is a Managing General Agent (MGA), a specialized type of insurance agent/broker that is vested with underwriting authority from an insurer. Its arrangement with insurers requires an exchange of information like underwriting guidelines, procedures and pricing. Brooks is a New Jersey corporation that conducts business in Nevada.

Kono worked for Bass as an insurance broker/underwriter based in Bass's Las Vegas, Nevada office from approximately December 2016 until September 2021. In that capacity, Kono had access, in connection with his employment, to Bass's AIM system and related electronic systems. On April 28, 2017, Kono executed with Bass a Nondisclosure Agreement ("NDA") that imposes continuing restrictions on the use and disclosure of Bass's Trade Secrets and Confidential Information and requires the return of Bass property and information upon an employee's termination. It also excludes from being confidential any information that is generally available to the public, independently developed and disclosed by others without violating the agreement or another party's rights, or that otherwise enters the public domain through lawful means. Kono Mot.

at 4, 11; ECF No. 171-1 at 29–31.

Before Kono resigned, he corresponded with Brooks's Managing Director, David Rosen. On July 28, 2021, the managing director of ComStar General Insurance Solutions ("ComStar")—an insurance company owned by Brooks's parent, Venbrook Group, LLC—introduced Kono to Rosen, describing Kono as having "built a substantial book with ComStar which he could eventually move to Brooks." ECF No. 175-7 at 5; Brooks Mot. at 5. On August 6, 2021, Kono sent Rosen spreadsheets, explaining that it had taken him "a bit longer to review the actual files to get the fees charged on the individual accounts." ECF No. 175-7 at 3. Rosen replied that he wanted to ask "a few questions on the spreadsheets provided" and that he needed "a copy of your contract with BASS to review." *Id.* at 2. On August 10, Kono sent Rosen the NDA, noting that he did not want to ask Bass's human resources department for a copy and "give them a hint of any kind." ECF No. 175-8 at 2. Rosen forwarded the NDA to Brooks's outside counsel, who responded that it was "a well-drafted agreement" and that "[t]he employee should just leave and not take information with them or use confidential/trade-secret information in soliciting business." ECF No. 175-9 at 2. The offer letter Kono signed on September 16, 2021, included his representation that he had not brought and would not bring a prior employer's confidential information, and after he began work, Kono acknowledged Brooks's written policy prohibiting the use of a former employer's confidential information. Brooks Mot. at 6 & Exs. A-1, A-2.

In September 2021, Kono received an offer of employment from Brooks, prompting him to give Bass a notice of resignation about two weeks later. In response, Bass made his resignation effective immediately and instructed Kono to return his company-issued laptop promptly. The following day, Kono did return his laptop, and Bass also disabled his access to its online systems that same day. Several days later, Kono began his employment with Brooks. Kono Mot. at 4–5; Brooks Mot. at 6.

Shortly after he received his offer, Kono inserted an external USB device into his Bass-issued laptop and copied files from the laptop to the drive. A few days later, he copied additional files and folders to that drive, including a file named "BASS BIBLE.xlsb" and folders labeled "CMSTR" and "COMSTAR." Several days later, he copied email backup files to that drive again

and deleted his browser history. Following his resignation, Kono copied folders containing thousands of files to a second USB flash drive and then copied some of those files to another device and deleted others. About ten days after he began to work for Brooks, he returned the second flash drive to Bass, but not the first. Declaration of Noel Kersh, ECF No. 175-5 [hereinafter, "Kersh Decl."].

Kono retained access to the Bass files on his USB drives until approximately February or March 2022. Deposition of David Kono 149:17–22, ECF No. 171-1 at 53 [hereinafter, "Kono Dep."]. Beginning on October 4, 2021—Kono's first day at Brooks—Bass received broker-of-record letters transferring accounts it had placed with ComStar to Brooks, including accounts placed through the retail agencies Scott Held Insurance Agency and ABI Insurance. Declaration of Robert Matthew Forchette, ECF No. 175-1 [hereinafter, "Forchette Decl."]; Rule 30(b)(6) Deposition of Jennifer Sanes, ECF No. 175-10 [hereinafter, "Sanes Dep."]. Several retail agencies that had worked with Kono at Bass, including Alliance Insurance, Scott Held, and American Benefits, moved business to Brooks after he joined it. Kono Dep.; Sanes Dep..

In January 2022, Bass filed its original complaint against Kono, and then later amended the complaint to add Brooks as a defendant. Discovery took almost three years, beginning on June 21, 2022, and closing on June 2, 2025, and parties also stipulated to Bass's Rule 30(b)(6) depositions later in 2025. Bass served its first substantive computation of damages in October 2025, asserting approximately $610,000 in lost income or consequential damages. It also sought additional exemplary damages, attorneys' fees and punitive damages. While Bass did not disclose a damages expert, its Chief Financial Officer stated that that figure represented revenue and fees rather than profit, and that the company's retention rate was about eighty percent. Sanes Dep. Each party has filed a separate motion for summary judgment.

**B. Disputed Facts**

Next, the Court finds the following material facts are disputed by the Parties.

First, the parties have a genuine and material factual dispute about whether Bass's information that Kono took with him had independent economic value and/or confidential. Bass contends that Kono stole data from it and that data, particularly its "Bass Bible," included client

lists and contact information, names of insureds, policy details and renewal dates, premium/pricing information, carrier identity and information, agent names, and other valuable, non-public business information that a competitor could use to undercut its pricing and target its renewals. See generally Forchette Decl.; Bass Reply at 6–7. In contrast, Kono testified in his deposition that he considered this Bass Bible to be his own work, built from contacts he had developed both before and during his time at Bass and from information he found on the internet. See generally Kono Dep. Kono does, however, concede that Bass's client lists and underwriting guidelines are confidential. Kono Mot. at 4. Brooks points to the testimony of Bass's Rule 30(b)(6) designee that "policy information and expiration dates and premium information would be confidential information that is not a trade secret," Rule 30(b)(6) Deposition of Robert Matthew Forchette 31:13–19, ECF No. 175-11 [hereinafter "Forchette Dep."], and argues that the identities of the retail agencies Bass serves are publicly known and that information concerning ComStar policies was already known within Brooks's corporate family. Brooks Mot. at 23–27.

Second, the Parties dispute whether Bass took reasonable measures to keep its information secret. Bass states that it relies on its nondisclosure agreements, its handbook restrictions, password protection, multi-factor authentication, role-based access limits, and the prompt termination of departing employees' access. Forchette Decl.; Bass Reply at 7–8. But Brooks responds that Bass had no real-time alerts for mass downloads, allowed departing employees to access local files for a period after termination, and produced the materials it now claims as trade secrets in discovery without a confidentiality designation. Brooks Reply at 15–16; Brooks Opp'n at 11–14.

Third, the Parties dispute whether Kono used Bass's information for Brooks's business. Kono does not dispute that he opened and referred to the Bass Bible after leaving Bass, but he contends that he did so only to review his own work product, not to solicit or write business. Kono Opp'n at 9; Kono Reply at 7. He testified that he did not use the Bass Bible or the other downloaded files while working at Brooks, and that none of that information went into the "Brooks Bible," the reference spreadsheet he created after joining Brooks. Kono Dep. But Bass points to other testimony from the same deposition that suggests otherwise: that while at Brooks, Kono contacted

fewer than twenty of the retailers listed in the information he had downloaded; that he used supplemental insurance applications saved on his Bass computer when writing policies at Brooks; and that he opened the USB drives “a couple dozen times” after leaving Bass. Kono Dep. Kono responds that he obtained those applications from carrier emails and the internet, not from Bass’s servers. Kono Opp’n at 8.

Fourth, the Parties dispute whether Brooks knew of, encouraged, or benefited from any misappropriation. Bass points to Kono’s pre-hire transmission of account-level spreadsheets to Rosen, Brooks’s request for and review of Kono’s NDA, and Brooks’s acceptance of broker-of-record transfers after Kono’s arrival. ECF Nos. 175-7, 175-8, 175-9; Bass Mot. at 20–23. Brooks points to Kono’s written representation that he would not bring a prior employer’s confidential information, its written policy prohibiting the use of such information, and its outside counsel’s advice that Kono should not take or use Bass’s information. Brooks Opp’n at 15–19. Kono testified that, after Bass demanded the return of its information, his supervisor asked him only whether he had returned everything, and that no one at Brooks told him not to contact the retailers he had worked with at Bass. Kono Dep.; id.

Finally, the Parties dispute whether Kono’s conduct caused Bass’s financial losses and, if so, in what amount. Bass relies on the timing of the broker-of-record transfers and on its CFO’s calculation of approximately $610,000 in lost revenue in the year after Kono’s departure. Forchette Decl.; Sanes Dep. Defendants rely on the testimony of three retail agents that Kono did not ask them to move their business and that they moved it because of their relationships with Kono or their dissatisfaction with Bass’s service after he left. Deposition of Nate Worden, ECF No. 171-1 at 66–72 [hereinafter “Worden Dep.”]; Deposition of Sara Eanni, id. at 81–82 [hereinafter “Eanni Dep.”]; Deposition of Wayde Kitchens, id. at 92–96 [hereinafter “Kitchens Dep.”]. Kono also points to testimony that Bass’s damages figure assumes that every lost account was attributable to him. Kono Mot. at 7.

## V. DISCUSSION

The Parties have cross-moved for summary judgment on all claims. The Court addresses

each claim in turn.

**A. Misappropriation of Trade Secrets**

Courts in this District regularly analyze federal DTSA and NUTSA claims together. See, e.g., ImageKeeper LLC v. Wright Nat'l Flood Ins. Servs. LLC, No. 2:20-CV-01470-CDS-NJK, 2025 WL 1745744, at *3 (D. Nev. June 24, 2025) (analyzing the plaintiff's DTSA and NUTSA claims together). The Court does the same.

Under the DTSA, a trade secret includes: "all forms and types of financial, business, scientific, technical, economic, or engineering information, including patterns, plans, compilations, program devices, formulas, designs, prototypes, methods, techniques, processes, procedures, programs, or codes, whether tangible or intangible, and whether or how stored, compiled, or memorialized physically, electronically, graphically, photographically, or in writing. The information must derive[] independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure of use of the information." InteliClear, LLC v. ETC Glob. Holdings, Inc., 978 F.3d 653, 657 (9th Cir. 2020) (quoting 18 U.S.C. § 1839(3)).

Similarly, NUTSA defines a trade secret as: "information, including, without limitation, a formula, pattern, compilation, program, device, method, technique, product, system, process, design, prototype, procedure, computer programming instruction or code that [d]erives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by the public or any other persons who can obtain commercial or economic value from its disclosure or use; and [i]s the subject of efforts that are reasonable under the circumstances to maintain its secrecy. Nev. Rev. Stat. § 600A.030 (5)(a)(1),(2).

To establish a DTSA claim under federal law, plaintiffs must meet three elements: "(1) that the plaintiff possessed a trade secret, (2) that the defendant misappropriated the trade secret; and (3) that the misappropriation caused or threatened damage to the plaintiff." InteliClear, LLC, 978 F.3d at 657–58 (citing 18 U.S.C. § 1839(5)).

To establish a NUTSA claim under Nevada law, a plaintiff must prove "(1) a valuable trade

secret; (2) misappropriation of the trade secret through use, disclosure, or nondisclosure of use of the trade secret; and (3) the requirement that the misappropriation be wrongful because it was made in breach of an express or implied contract or by a party with a duty not to disclose." Elko, Inc. v. WTH Com. Servs., LLC, No. 3:22-CV-15 (MMD/CLB), 2023 WL 6141623, at *2 (D. Nev. Sept. 20, 2023) (quoting Frantz v. Johnson, 116 Nev. 455, 999 P.2d 351, 358 (Nev. 2000)).

Both statutes thus similarly require that Plaintiffs show: (1) that a protectable trade secret exists; and (2) misappropriation of that trade secret. Id.

**1. Trade Secret**

The Court finds that there is a genuine issue of disputed fact as to the existence of a trade secret. Bass has produced evidence that at least some of the information Kono took qualifies as a trade secret, the first element of DTSA and NUTSA: "a customer list qualifies as a trade secret 'because it allows a competitor . . . to direct its sales efforts to those potential customers that are already' doing business with the plaintiff." AssuredPartners of Arizona LLC v. Barrios, No. 25-CV-03849, 2026 WL 482385, at *4 (D. Ariz. Feb. 20, 2026) (citation modified) (citing MAI Sys. Corp. v. Peak Computer, Inc., 991 F.2d 511, 521 (9th Cir. 1993)). Even when the "customers lists . . . include non-public information" the client lists are still "qualif[ied] as trade secrets." Id. But Bass's claim is not limited to a customer list; it also covers customer and pricing information, and whether that is a trade secret is a question for a fact finder. See Frantz, 116 Nev. at 466, 999 P.2d at 358. The key relevant considerations include the extent to which the information is known outside the business and could be lawfully acquired by others, whether it was treated as confidential, and the measures taken to guard it—all of which the Parties dispute here. Summary judgment on this element is therefore inappropriate.

**2. Misappropriation**

The Court finds that there are genuine issues of disputed fact on the element of misappropriation. While it is undisputed that Kono copied the Bass Bible and several folders and email backups to a USB drive the day after he received an offer to work at Brooks, Kono argues that he did not use the information at Brooks and did not copy it into any reference file he created once there. He also testified that the only retailers he did contact were ones with whom he already

had a longstanding relationship and who had asked specifically to continue working with him. See generally Kono Dep. So, while a reasonable factfinder could find that Kono did contact people on the list and did acquire that list by improper means, it could also find the opposite. Bass argues that Kono's testimony is internally inconsistent and that his deletions and his failure to return the first drive show consciousness of wrongdoing. Bass Opp'n to Kono at 16–18. Those are arguments for the jury. Credibility determinations and the weighing of the evidence "are jury functions, not those of a judge." Anderson, 477 U.S. at 255. Summary judgment on the misappropriation claim against Kono is therefore denied to both Bass and Kono.

As for Brooks, Bass seeks to hold Brooks liable both directly and vicariously. Bass Mot. at 20–23. Brooks argues that it had no knowledge of any misappropriation, that it took affirmative steps to prevent the use of third-party information, and that Kono was not its agent when he copied Bass's files. Brooks Opp'n at 15–20; Brooks Reply at 16–18. For direct liability, the record contains evidence from which a factfinder could infer that Brooks knew or had reason to know that information Kono supplied came from Bass. Before Brooks hired Kono, Rosen received spreadsheets that Kono prepared by reviewing "the actual files to get the fees charged on the individual accounts," asked to discuss "the spreadsheets provided," and requested Kono's contract with Bass. ECF No. 175-7 at 2–3. Brooks then obtained Bass's NDA from Kono—who explained that he did not want to request a copy from Bass and "give them a hint of any kind"—and sought counsel's advice about it. ECF Nos. 175-8, 175-9. After Bass demanded the return of its information, according to Kono, his new supervisor asked him only whether he had returned everything.

For vicarious liability, under Nevada law, an employer is not liable for an employee's intentional conduct if that conduct was "a truly independent venture of the employee," was "not committed in the course of the very task assigned to the employee," and was "not reasonably foreseeable under the facts and circumstances of the case considering the nature and scope of his or her employment." NRS 41.745(1); see Anderson v. Mandalay Corp., 131 Nev. 825, 358 P.3d 242, 247 (2015); Rockwell v. Sun Harbor Budget Suites, 112 Nev. 1217, 1225–26, 925 P.2d 1175, 1180–81 (1996). Here, a factfinder could reasonably find that Kono's alleged use of Bass's

information to solicit and service accounts for Brooks fell within the very task Brooks assigned him and was foreseeable to an employer that had reviewed his NDA and received his account spreadsheets. But it could also credit Brooks's evidence that Kono acted contrary to its written policy and his own representations. Bass argues in the alternative that Brooks ratified Kono's conduct by failing to terminate, discipline, or monitor him after learning of this lawsuit. Bass Mot. at 22–23. Whether Brooks's response to the litigation amounted to ratification or willful blindness, or instead reflected reasonable reliance on Kono's assurances, turns on the same disputed facts. Summary judgment on the misappropriation claim against Brooks is therefore denied as to both Bass and Brooks.

**3. Causation and Damages**

Finally, the Parties genuinely dispute whether any misappropriation caused Bass harm. Bass has produced evidence that accounts whose information was found on the USB drives transferred to Brooks within weeks of Kono's arrival and that it lost approximately $610,000 in revenue from Kono's expected renewals in the following year. Forchette Decl.; Sanes Dep. Defendants have produced evidence that the retail agents who moved that business did so because of their relationships with Kono or their dissatisfaction with Bass's service, and that Bass's calculation assumes that every lost account was attributable to Kono. Kono Mot. at 5–7; Brooks Opp'n at 20–21, 26. Temporal proximity alone does not prove causation, but together with the evidence of copying and use described above, it is enough to create a triable issue.

**B. Breach of Contract**

The Court declines to grant summary judgment on Bass's breach of contract claim against Kono. In Nevada, to prove a breach of contract claim, a plaintiff must demonstrate (1) a valid contract exists, (2) there was a breach of the contract, and (3) damages occurred. Nat'l DME, L.C. v. Katsikas, No. 2:23-CV-01243-CDS-NJK, 2025 WL 2462807, at *8 (D. Nev. Aug. 25, 2025) (citing Saini v. Int'l Game Tech., 434 F. Supp. 2d 913, 919–20 (D. Nev. 2006); Richardson v. Jones, 1 Nev. 405, 405 (Nev. 1865)). A party's failure to perform obligations within the express terms of an agreement constitutes a literal breach of contract. Saini, 434 F. Supp. 2d at 923 (citing Nelson v. Planet Ins. Co., 111 Nev. 1373, 906 P.2d 703, 705–07 (Nev. 1995)).

Bass alleges that Kono breached the NDA by copying and using Bass's confidential information—that is, the Bass Bible—without Bass's authorization and further used that information to solicit Bass clients.

First, Bass and Kono do not dispute that the NDA was a valid, existing contract. See Kono Mot. at 11–12. Rather, the parties dispute whether Kono breached the NDA. The NDA prohibits the employee from using or disclosing trade secrets or confidential information for any purpose other than performing his duties for Bass, either during or after termination. See ECF No. 171-1 at 29–31. The NDA defines confidential information to include customer lists but exclude information generally available to the public. Id. Thus, Bass and Kono's dispute hinges on two questions: whether Kono "used or disclosed" the Bass Bible during his employment with Brooks, and whether the Bass Bible constituted "confidential information" as defined by the terms of the NDA.

The Court finds that it need not reach the second question. Bass and Kono genuinely dispute whether Kono used the Bass Bible to solicit clients while at Brooks or disclosed the Bass Bible to Brooks at all.[1] Thus, the Court finds there is a triable issue of fact as to whether Kono acted in a way that breached the express terms of the NDA, as well as what damages, if any, resulted from that hypothetical breach. Summary judgment on breach of contract is denied.

**C. Breach of Fiduciary Duty**

Bass and Kono cross-move for summary judgment on Bass's breach of fiduciary duty claim against Kono. "A claim for breach of fiduciary duty customarily has three elements: (1) existence of a fiduciary duty, (2) breach of the duty, and (3) damages as a result of the breach." Guzman v. Johnson, 137 Nev. 126, 132, 483 P.3d 531, 538 (Nev. 2021). The Nevada Supreme Court has held that "employees owe their employers a duty of loyalty and . . . has permitted employers to sue former employees for breach of fiduciary duty." Metlife Bank, N.A. v. Evergreen Moneysource Mortg. Co., No. 2:10-CV-00288-RLHPAL, 2010 WL 2541729, at *2 (D. Nev. June 17, 2010) (citing Tousa Homes, Inc. v. Phillips, 363 F. Supp. 2d 1274, 1280 (D. Nev. 2005); White Cap

[1] Bass alleges that Kono disclosed information to Brooks by email, citing to "Ex. 22" and "Ex. 23." See Bass's Motion for Summary Judgment at 26–27 & n. 125. It appears these exhibits are not attached, so the Court cannot find that this fact is undisputed. See FED. R. CIV. P. 56(c)(1)(A).

Indus., Inc. v. Ruppert, 119 Nev. 126, 127, 67 P.3d 318, 318–19 (Nev. 2003)).

Bass contends that Kono's former position as a senior officer of Bass created a duty of loyalty. In that position, Kono had access to confidential information—such as, allegedly, the Bass Bible—and Kono's misappropriation of the Bass Bible was a breach of his duty to Bass. Kono argues that, as a former employee, he did not owe a fiduciary duty to Bass, but even if he did, he did not breach any fiduciary duty because he did not use the Bass Bible after he left Bass. Further, Kono claims that Bass cannot prove damages, because any loss of clientele was due to the clients' unhappiness with Bass or pre-existing relationships with Kono—not the Bass Bible.

Construing the facts in a light most favorable to Bass, a fact finder could find that Kono breached a fiduciary duty by misappropriating confidential information. However, construing the facts in a light favorable to Kono, a factfinder could also find that he did not. Kono's argument that he owed no duty as a former employee does not resolve the claim because the copying at issue happened while he was still at Bass.

In other words, the parties dispute material facts underlying the breach of fiduciary duty claim. There is a dispute over what Kono *did* with the Bass Bible, which directly bears on whether Kono indeed "breached" any duty to Bass. See LVRC Holdings, LLC v. Brekka, 128 Nev. 915, 381 P.3d 636 (Nev. 2012); *supra*, Section V.A.2. In addition, the Parties dispute whether any alleged breach actually and/or proximately caused "damages" to Bass—*i.e.*, whether Bass's loss in business can be attributed to Kono's alleged taking and use of the Bass Bible. Thus, as a matter of law, both Parties have brought forth sufficient evidence to create triable issues of fact for a jury. Summary judgment on the breach of fiduciary duty claim is denied.

**D. Conversion**

Under Nevada law, conversion is "a distinct act of dominion wrongfully exerted over personal property in denial of, or inconsistent with, title or rights therein or in derogation, exclusion or defiance of such rights." Edwards v. Emperor's Garden Rest., 122 Nev. 317, 328, 130 P.3d 1280, 1287 (Nev. 2006); Blige v. Terry, 139 Nev. 607, 616, 540 P.3d 421, 431 (2023). It is "an act of general intent, which does not require wrongful intent and is not excused by care, good faith, or lack of knowledge. Whether a conversion has occurred is. . . a question of fact for the jury." M.C.

Multi-Family Dev., L.L.C. v. Crestdale Associates, Ltd., 124 Nev. 901, 193 P.3d 536, 543 (Nev. 2008). Conversion does not require a manual or physical taking of property. Blige, 139 Nev. at 616, 540 P.3d at 431. Tangible and intangible property alike can be converted. Id. (citing M.C. Multi-Family Dev., 193 P.3d at 538–39).

All three Parties have moved for summary judgment on Bass's conversion claim. Bass alleges that Kono exercised wrongful dominion over Bass's property by copying and retaining Bass's data and deleting evidence, while Brooks benefited from the converted information by receiving business derived from that data. Kono argues that Bass did not have ownership over or rightful title to the Bass Bible, and even if it did, Kono did not wrongfully exert dominion over the Bass Bible because he never used it during his employment with Brooks, nor did he sell or profit from the Bass Bible. Brooks again argues that Bass's conversion claim against it fails as a matter of law, due to Bass's inability to prove damages.

Construing all reasonable inferences in favor of Bass, Kono's clandestine downloading of the Bass Bible and subsequent use for client outreach while employed at Brooks could constitute conversion. Construing all reasonable inferences in favor of Defendants, Kono's downloading of a publicly-available contact information list, which Kono did not use for his work with Brooks, would not constitute conversion. However, as explained above, the Court finds a triable dispute of fact over whether the Bass Bible was Bass's property, as well as whether Kono in fact used the Bass Bible while working for Brooks. Thus, the Court denies all Parties' motions for summary judgment on the conversion claim.

**E. Unjust Enrichment**

For the same reasons the Court denies summary judgment on Bass's breach of contract and conversion claims, it denies summary judgment on Bass's unjust enrichment claims.

In Nevada, unjust enrichment has three elements: "the plaintiff confers a benefit on the defendant, the defendant appreciates such benefit, and there is acceptance and retention by the defendant of such benefit under such circumstances that it would be inequitable for him to retain the benefit without payment of the value thereof." Nautilus Ins. Co. v. Access Med., LLC, 137 Nev. 96, 101, 482 P.3d 683, 688 (Nev. 2021) (citation omitted). A claim for unjust enrichment is

unavailable when there is an express, written contract. Leasepartners Corp. v. Robert L. Brooks Tr., 113 Nev. 747, 755, 942 P.2d 182, 187 (Nev. 1997).

Bass, relying on the NDA with Kono, alleges that the Bass Bible conferred a benefit on Defendants, who profited from its usage. Kono argues that Bass did not own the Bass Bible, and that he did not use it while working for Brooks. Brooks claims that Bass cannot identify the benefit or profit supposedly gained by Brooks.

Although it is undisputed that the NDA is valid, whether it governs the Bass Bible is not. And the Parties have put forth sufficient evidence to create a dispute as to whether Defendants were unjustly enriched. The Parties dispute the ownership of the Bass Bible, as well as whether Defendants used or profited from the Bass Bible. Due to these genuine disputes of fact that go to the heart of the unjust enrichment inquiry, summary judgment on the unjust enrichment claims is denied.

**F. Tortious Interference**

"In an action for intentional interference with contractual relations, a plaintiff must establish: (1) a valid and existing contract; (2) the defendant's knowledge of the contract; (3) intentional acts intended . . . to disrupt the contractual relationship; (4) actual disruption of the contract; and (5) resulting damage." J.J. Indus., LLC v. Bennett, 119 Nev 269, 274, 71 P.3d 1264, 1267 (Nev. 2003).

As to Kono, Bass alleges that Kono knew of valid and existing contracts with customers and clients, and, using the Bass Bible, intentionally acted to disrupt those contractual relationships by soliciting customers for himself. As to Brooks, Bass alleges that Brooks knew of the valid and existing NDA with Kono but encouraged Kono to take and use the Bass Bible to solicit customers.

Kono claims he did not solicit any clients, and any former Bass client that went to Brooks did so of their own accord. Brooks claims that Bass has not shown resulting damages from any alleged tortious interference, entitling it to summary judgment as a matter of law.

The Court finds that the question central to Bass's tortious interference claim is whether there were intentional acts, by Kono and/or Brooks, intended to disrupt contractual relationships with Bass's clients. Specifically, the Parties dispute whether Kono affirmatively and intentionally

used the Bass Bible while working for Brooks. Separately but relatedly, the Parties dispute whether Kono in fact *solicited* clients, rather than clients going to Brooks of their own volition. These are questions for a jury to decide; thus, the Court denies summary judgment on the intentional interference with contractual relations claims.

## VI. CONCLUSION

For the foregoing reasons, the Court orders the following:

**IT IS ORDERED** that Defendant David Kono's Motion for Summary Judgment (ECF No. 171) is **DENIED.**

**IT IS FURTHER ORDERED** that Defendant Brooks Group Insurance Agency, LLC's Motion for Summary Judgment (ECF No. 172) is **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Summary Judgment (ECF No. 175) is **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Leave to File Under Seal (ECF No. 179) is **GRANTED**. Exhibits 1 through 5 shall remain under seal.

**IT IS FURTHER ORDERED** that Parties shall file a proposed joint pretrial order within thirty days of the date of this Order.

**DATED:** September 30, 2026.

**RICHARD F. BOULWARE, II**
**UNITED STATES DISTRICT JUDGE**